RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0245p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTONIO D. CROWELL,

*Defendant-Appellant.*

No. 06-5902

>

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 03-00120—Todd J. Campbell, Chief District Judge.

Argued: May 29, 2007

Decided and Filed: June 26, 2007

Before: GILMAN, GIBBONS, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Kimberly S. Hodde, HODDE & ASSOCIATES, Nashville, Tennessee, for Appellant.
Paul M. O'Brien, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for
Appellee. **ON BRIEF:** Kimberly S. Hodde, HODDE & ASSOCIATES, Nashville, Tennessee, for
Appellant. Philip H. Wehby, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee,
for Appellee.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Antonio D. Crowell was
convicted of being a felon in possession of a firearm. At sentencing, the district court found that
Crowell had three prior convictions for violent felonies and therefore qualified for an enhanced
sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). The court calculated
Crowell's range under the advisory Sentencing Guidelines to be 235 to 293 months and sentenced
Crowell to 235 months imprisonment. Crowell appeals, asserting that: (1) the evidence presented
at trial was insufficient to support his conviction; (2) the district court erred in confirming the
existence of his juvenile adjudication for aggravated robbery; (3) the court's use of his alleged
juvenile adjudication as a predicate offense for purposes of the ACCA violated his due process

1

rights; and (4) his sentence is not reasonable under 18 U.S.C. § 3553(a). For the following reasons, we affirm the conviction and the sentence of the district court.

I.

At approximately 5:00 p.m. on August 22, 2002, Metro Nashville Police Department (MNPD) Officer Jamie Scruggs was on patrol in north Nashville when he saw a white Chevrolet Lumina matching the description of a vehicle that had reportedly been involved in an earlier incident. Officer Scruggs followed the vehicle and radioed two other MNPD officers, Sharraff Mallery and Wayne Fisher, who were in the area. Mallery and Fisher followed the vehicle and, after the suspect driver parked the car, a chase on foot ensued.

Mallery pursued Crowell, who was the driver of the Chevrolet, and his passenger, an unidentified person who was never captured, through a local public housing project. Mallery testified that during the chase he saw Crowell holding onto the waistband of his pants with his right hand which, in his experience, often indicated that a person was carrying a gun. Mallery further testified that he saw Crowell "retrieve a silver object," at which point he radioed that the defendant had a gun.[1] When Mallery saw Crowell throw the gun into a nearby bush, he was approximately five to ten feet behind Crowell. In his testimony, Mallery emphasized his certainty that Crowell discarded a gun and that no one else was observed in the area where the gun was recovered. Mallery continued to chase Crowell across the street, where after a brief struggle, he took the defendant into custody. At that point, Fisher arrived on the scene and Mallery directed Fisher to the bush—located roughly 100 feet away—where Mallery had seen Crowell throw the gun. Fisher proceeded to the bush and retrieved the gun, later identified as a Ruger P-94 nine-millimeter semiautomatic handgun.[2] The gun was retrieved roughly thirty seconds to a minute after Crowell was apprehended.

Fisher testified that he too witnessed Crowell discard the gun. According to Fisher, he was running in an attempt to cut off Crowell's escape when he saw the defendant pull a gun from his waistband and throw it to the ground. Fisher testified that he was approximately thirty to forty feet from Crowell at the time and that he had no difficulty "whatsoever" seeing Crowell discard the gun.

At trial, Crowell testified that, contrary to Mallery's testimony, Mallery lost sight of Crowell during the chase. Crowell asserted that he ran from the police only because he was on parole. According to Crowell, the officers never saw him with a gun but instead charged him with possession because he was the only person apprehended. Defense witness Terica Green, a friend of Crowell's cousin, testified that she was standing across the street when she saw another unidentified man run out of a building, along with Crowell and a police officer. According to Green, it was this man, not Crowell, who dropped the gun. Green did not come forward with this information for almost three years after Crowell's arrest.

On June 8, 2005, a jury found Crowell guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At his sentencing hearing, Crowell denied the existence of a 1990 juvenile conviction for aggravated robbery.[3] The government responded by presenting written

---

[1] Mallery periodically radioed updates during his pursuit of the defendant. In his radio transmissions, which were introduced at trial, Mallery contemporaneously related his observation of Crowell discarding a gun into a nearby bush.

[2] Mallery testified that when he later brought Crowell before the night court commissioner for booking, Crowell made a statement to him indicating that the retrieved gun was a "nice nine millimeter." At trial, Crowell denied making this statement.

[3] Crowell did not contest the existence of two other prior convictions.

proof of Crowell's juvenile adjudication along with the testimony of the detective who prosecuted Crowell on the 1990 charge. The district court concluded that the government had carried its burden for proving the existence of the juvenile conviction. Including this conviction, the court found that Crowell had three prior convictions for violent felonies and therefore qualified as an armed career criminal pursuant to 18 U.S.C. § 924(e). The court also concluded that using Crowell's juvenile conviction as an ACCA predicate was not a violation of due process.

The court found Crowell to have an offense level of 33 and a criminal history category of VI, resulting in a Guidelines range of 235 to 293 months. The court denied Crowell's U.S.S.G. § 5K2.13 motion for a downward departure based on his diminished capacity and sentenced Crowell to 235 months imprisonment.

## II.

### A.

Crowell contends that the evidence presented at trial was constitutionally insufficient to support his conviction as a felon in possession of a firearm. In reviewing a sufficiency of the evidence claim, this court considers "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003) (internal quotation marks omitted). "It is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). In assessing the sufficiency of the evidence, this court "do[es] not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995) (internal quotation marks omitted). Further, this court makes all reasonable inferences and credibility decisions in support of the jury's verdict. *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990).

To obtain a conviction pursuant to § 922(g)(1), the government must prove beyond a reasonable doubt: "(1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm and ammunition specified in the indictment; and (3) that the possession was in or affecting interstate commerce." *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003) (internal quotation marks omitted). Crowell challenges only the element of possession.

Crowell asserts that "[a]lthough the government's two (2) law enforcement witnesses were unwavering that the defendant had a firearm and threw it into the bushes while fleeing from the police, the defense proof contradicted this evidence." Crowell cites only his own testimony and that of Green, who testified that she observed "a little dude" drop the gun in the bushes, not Crowell. However, Crowell provides no support for his assertion that the existence of any evidence to the contrary renders a conviction constitutionally deficient. The government presented ample evidence establishing that Crowell knowingly possessed the firearm in question. In their trial testimony, Mallery and Fisher both conveyed their complete confidence in having seen the defendant discard the gun in the nearby bushes. Both officers were near the defendant at the time and their views were unobstructed. Mallery's testimony was substantiated by the radio transmission, made contemporaneously with the event, in which he reported that Crowell had thrown a gun while fleeing. Both officers identified the gun at trial and Crowell as the person who discarded the gun. Finally, Mallery testified that, after his arrest, Crowell made the statement that the gun in question "was a nice nine millimeter."

After hearing testimony from the officers at the scene of the arrest, the jury made the decision to credit this testimony over that of the contradictory testimony proffered by Crowell and

Green. Review of the record reveals nothing that indicates this decision was in error. Because a rational trier of fact could have found beyond a reasonable doubt that Crowell possessed the firearm in question, we find that sufficient evidence was presented at trial to support Crowell's conviction as a felon in possession of a firearm.

B.

Crowell contests the existence of an April 1990 juvenile court adjudication that, along with two other convictions, established that Crowell was an armed career criminal under 18 U.S.C. § 924(e). Crowell denied the existence of the juvenile adjudication at his sentencing hearing and now asserts that a document indicating that he had no juvenile record "should have given the district court concern about the reliability of the information and evidence used to impose the steep enhancement [pursuant to § 924(e).]" This court reviews a district court's factual findings at sentencing for clear error. *United States v. Katzopoulos*, 437 F.3d 569, 578 (6th Cir. 2006).

The government introduced the following certified documents related to the 1990 juvenile conviction at the sentencing hearing: (1) a juvenile court petition, signed by the defendant on December 28, 1989, charging Crowell with aggravated robbery in violation of Tenn. Code Ann. § 39-12-402; (2) a decree note regarding Crowell's April 26, 1990, hearing; and (3) an order dated April 27, 1990, by the juvenile court of Davidson County stating that Crowell pled guilty and finding him to be a delinquent child. Further, MNPD Detective James Lambert, the prosecutor of the juvenile petition, testified that he investigated the 1989 armed robbery that resulted in Crowell's 1990 conviction and that Crowell was fingerprinted in that case. Lambert had the fingerprints from the 1989 robbery case compared with the set of fingerprints taken from Crowell in the instant case, and this analysis confirmed Crowell as the person arrested in both cases. To the contrary, Crowell cites only a computer-generated document from the clerk of court indicating that he has no juvenile record. The document in question provides virtually no information beyond listing Crowell's name.

The district court acknowledged the contradictory documents and made the following conclusion: "Based on the fact that I have a certified petition charging the crime and a certified order finding delinquency and committing Antonio Dewayne Crowell to the State, I think the government has carried its burden that there is in fact [a] conviction for aggravated robbery." Crowell offers no explanation for the substantial proof supporting the existence of the conviction, and nothing in the record indicates that the district court erred in making this determination. In light of the significant evidence substantiating the government's assertion that Crowell was convicted of the 1990 juvenile offense, we deny this challenge, finding no clear error.

C.

Crowell contends that, even if we find that he has a juvenile adjudication for a "violent felony," using that finding as a predicate offense for purposes of the ACCA violates due process and runs afoul of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This court reviews a constitutional challenge to a sentence *de novo*. *United States v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003).

Under *Apprendi*, a fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt or else admitted by the defendant. 530 U.S. at 490. The *Apprendi* Court, however, provided the following exception: a prior conviction can be used to increase the penalty for a crime beyond the prescribed statutory maximum even if it was not submitted to the jury and proved beyond a reasonable doubt. *Id.* Crowell contends that a prior juvenile, nonjury adjudication does not qualify as a "prior conviction" for purposes of the *Apprendi* exception, and therefore such an adjudication cannot later be used for sentencing "without affording the defendant *Apprendi* rights." Crowell relies exclusively on the Ninth Circuit's decision in *United States v. Tighe*, 266 F.3d 1187, 1194 (9th Cir. 2001), to support

this proposition, though he acknowledges that both the Third and Eighth Circuits have rejected *Tighe*.[4] *See United States v. Jones*, 332 F.3d 688, 696 (3d Cir. 2003) (finding juvenile adjudications qualify as ACCA predicates so long as they meet the due process requirements for *juvenile* proceedings); *United States v. Smalley*, 294 F.3d 1030, 1032-33 (8th Cir. 2002) (same). Crowell encourages the panel to adopt the logic of the *Tighe* court.

We have not directly addressed this issue. However, in *United States v. Beasley*, this court stated that "in *Apprendi* and its progeny, including the recent decision in [*United States v. Booker*, 543 U.S. 220 (2005)], the Supreme Court has uniformly excepted 'the fact of a prior conviction' from its general rule that sentence-enhancing facts must be found by a jury and proved beyond a reasonable doubt." 442 F.3d 386, 391 (6th Cir. 2006) (citations omitted). Further, in *United States v. Barnett*, we noted that "[t]his Court, among others, has rejected the argument that *Apprendi* requires the nature of prior convictions to be determined by a jury, holding instead that the district court's authority to determine the existence of prior convictions was broad enough to include determinations regarding the nature of those prior convictions." 398 F.3d 516, 524 (6th Cir. 2005). Although neither *Beasley* nor *Barnett* directly addressed the use of juvenile adjudications as ACCA predicates, both confirm that this court has never recognized any caveats to *Apprendi*'s "prior conviction" exception.

We now explicitly hold that the use of procedurally sound juvenile adjudications as ACCA predicates does not violate due process. As noted by the Third Circuit, Congress has the power "to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant received all process that was due when convicted – for adults that includes the right to a jury trial; for juveniles, it does not." *Jones*, 332 F.3d at 695 (referencing the dissent in *Tighe*). Rather than relying on the "narrow parsing of words" that would create a bright-line rule whereby proof beyond a reasonable doubt, fair notice, and a right to a jury trial are all required procedural safeguards that must be present before qualifying for the *Apprendi* exception, a court should instead consider "the reality of the actual juvenile adjudication[] to determine whether [it is] sufficiently reliable so as to not offend constitutional rights if used to qualify for the *Apprendi* exception." *Id.* at 695-96; *see also Smalley*, 294 F.3d at 1033.

There is no indication that Crowell was not afforded appropriate due process in his juvenile adjudication. Further, Crowell's juvenile adjudication required a finding of proof beyond a reasonable doubt. *See* Tenn. Code Ann. § 37-5-103. Juvenile adjudications, where the defendant has the right to notice, the right to counsel, the privilege against self-incrimination, the right to confront and cross-examine witnesses, and the right to a finding of guilt beyond a reasonable doubt, provide sufficient procedural safeguards to satisfy the reliability requirement that is at the heart of *Apprendi*.[5] Accordingly, we join the Third, Eighth, and Eleventh circuits in finding that the imposition of a sentence enhancement under the ACCA based on a defendant's juvenile adjudication without a jury trial does not violate the defendant's due process rights or run afoul of *Apprendi*. We therefore find that the district court did not violate Crowell's right to due process by imposing the ACCA's enhancement based on his juvenile adjudication.

---

[4] In *Morris v. United States*, 118 F. App'x 72, 75 (7th Cir. 2004), the Seventh Circuit noted that *Tighe* "stands alone as the minority view" in finding that juvenile adjudications obtained in proceedings that do not afford a right to a jury or require proof beyond a reasonable doubt cannot serve as ACCA predicates. Indeed, the Eleventh Circuit recently joined the Third and Eighth Circuits in rejecting *Tighe*. *See United States v. Burge*, 407 F.3d 1183, 1190 (11th Cir. 2005) (finding that "a prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for *Apprendi* purposes.") (internal quotation marks and citations omitted).

[5] Tenn. Code. Ann. § 37-1-127 provides this full panoply of rights to juveniles at trial.

D.

Lastly, Crowell contends that his 235-month sentence was excessive and unreasonable under 18 U.S.C. § 3553(a). Crowell asserts that the district court failed to adequately consider various relevant mitigating factors and that he should have been given a sentence below his Guidelines range.

After *Booker*, the discretion of a district court in handing down a sentence is enhanced and a sentence will be upheld on appeal if that sentence is "reasonable." *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005). Under this scheme, the district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2). *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006). Although a sentence should reflect the considerations listed in § 3553(a), "there is no requirement that the district court engage in a ritualistic incantation of the § 3553(a) factors it considers." *United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006) (quoting *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005)). Because the district court sentenced Crowell within the advisory Guidelines range, his sentence is credited with a rebuttable presumption of reasonableness and it is incumbent upon Crowell to establish that his sentence was unreasonable. *See Rita v. United States*, _ S.Ct._, No. 06-5754, 2007 WL 1772146, at *6-7 (June 21, 2007); *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

Crowell fails to show that his sentence was unreasonable. The thrust of Crowell's argument is that the district court failed to account for mitigating factors, primarily that Crowell suffers from a "substantial mental handicap." The district court considered Crowell's motion for a downward departure based on his diminished mental capacity pursuant to U.S.S.G. § 5K2.13 but ultimately found that Crowell's "long history of violence" and "unwillingness to conform his conduct to the law" precluded a departure. The court further found that there was no proof in the record that his mental capacity "contributed substantially" to his decision to possess a firearm, as required for a departure under § 5K2.13. Crowell does not contest the denial of his § 5K2.13 motion but argues that his diminished capacity should have been considered by the court in weighing the factors set forth in § 3553(a). The court did, however, explicitly announce its consideration of Crowell's mental capacity, along with the specific circumstances of his offense. The court emphasized the need to protect the public as central to its sentencing decision, a reasonable concern in light of Crowell's own acknowledgment of his "smorgasbord of criminal convictions."

Crowell fails to identify any relevant factor that the district court neglected to consider. Crowell contends the sentence is longer than it need be, but the "mere allegation that the sentence imposed is greater than necessary to achieve the goals of punishment in § 3553(a) is insufficient to rebut the presumption of reasonableness." *United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006). The court found that a sentence of 235 months was "reasonable and appropriate given the totality of the circumstances, the advisory Guidelines, and the requirements of 18 U.S.C. § 3553(a)." The court went on to note that the case was "not outside the heartland of the advisory Guidelines," that the defendant has a "long history of violent crimes and is unwilling to change his conduct to conform to the law," and that Crowell "must be incarcerated as sentenced to protect the public." The court took account of Crowell's mental capacity and the nature of his crime and found that a sentence at the bottom end of the Guidelines range would provide the optimal balance between Crowell's personal circumstance and the need to protect the public. Nothing in the record indicates the district court erred in this assessment. We therefore find that Crowell's sentence was reasonable.

III.

For the foregoing reasons, we affirm Crowell's conviction and sentence.