# United States Court of Appeals
## For the First Circuit

Nos. 05-1655, 05-1925

UNITED STATES OF AMERICA,

Appellee,

v.

LARRY MATTHEWS,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

William A. Hahn, with whom Hahn & Matkov was on brief, for
appellant.
Sandra S. Bower, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

August 7, 2007

**LIPEZ, <u>Circuit Judge</u>.** Appellant Larry Matthews was convicted of being a felon in possession of a firearm and sentenced under the Armed Career Criminal Act ("ACCA") to the statutory minimum fifteen-year term of imprisonment. <u>See</u> 18 U.S.C. § 924(e)(1). His sentencing challenge requires us to consider an issue on which other circuits have split and ours has not yet explicitly spoken: whether juvenile adjudications constitutionally may be used as predicate convictions to support an ACCA enhancement. After a careful review of the relevant law in the context of this case, we find no due process barrier to the use of appellant's juvenile proceeding. His other sentencing arguments are equally unavailing, as are his trial-based claims of insufficient evidence and instructional error. We therefore affirm both his conviction and sentence.[1]

## I.

The facts as the jury could have found them are as follows. During the evening of August 11, 2003, four Boston police officers assigned to the Youth Violence Strike Force were driving through the city's Roxbury section in an unmarked police car when they observed a small group of men drinking alcohol outside the Lenox Street housing development. After appellant saw the police

---

[1] Judgment of conviction was entered on March 8, 2005, and appellant filed a timely notice of appeal on March 10. A separate appeal was taken from the subsequent denial of his renewed motion for judgment of acquittal, and the two appeals were consolidated.

vehicle, he was observed making what appeared to be a "security adjustment" to an object at his waist. As the officers pulled up beside the men and Officer Bresnahan called out to appellant by name, appellant made a second adjustment and began to walk quickly away from the scene; he subsequently accelerated into a run. Appellant, who was known to three of the officers, had never run from them during previous encounters.

Two of the officers, Sullivan and Bresnahan, got out of the car and gave chase, following the defendant into the courtyard of the housing development and then into the building at 10 Lattimore Court.[2] As Sullivan entered the building, he saw appellant rise from a crouched position near an apartment door, and then run out of the building. After Sullivan moved to the spot where he had seen appellant, he discovered a .22-caliber pistol under the doormat in front of Apartment 87. Sullivan then yelled "gun" as Bresnahan, still chasing appellant, ran past Sullivan and back out to the courtyard.

Meanwhile, the other two officers, Brown and Freire, had driven into the parking lot of the complex and then into the courtyard from another direction. They saw appellant coming from the direction of 10 Lattimore Court and, after repeatedly ordering appellant to get to the ground, Friere forced him down, handcuffed

---

[2] Although originally scheduled to testify, Bresnahan did not appear at trial because of an injury.

him, and placed him under arrest. No fingerprints were found on the gun or the ammunition in it. Appellant subsequently was charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

At trial, the government sought to prove circumstantially that appellant had put the gun under the doormat while fleeing from the officers. In addition to presenting testimony from the officers, the government called as a witness Kelly Gonzales, a tenant of Apartment 87. She reported that she left the apartment between noon and 1 p.m. on the day of the incident, that she stood on the mat to lock the door, and that the gun was not there at that time. She also testified that neither she nor her mother, with whom she lived, owned a gun.

In seeking to discredit the officers' account of what occurred, the defendant presented the testimony of an architect, John Cunningham, who had prepared several diagrams depicting the layout of the first floor of 10 Lattimore Court. Cunningham testified about the field of view from various points in the lobby between the front entrance and the back exit. By means of shading in different colors, one of his illustrations showed which parts of the floor could be seen fully by someone standing just inside the entry door and which areas had restricted visibility because of a

stairwell located directly in front of the entrance.[3] Appellant's girlfriend, Marissa Wallace, also testified, and stated that she had never seen appellant with a gun.

A jury found appellant guilty, and the district court sentenced him to a term of 180 months under the ACCA, finding that he had the requisite three prior convictions for violent felonies or serious drug offenses. See 18 U.S.C. § 924(e)(1). On appeal, he claims that the evidence presented at trial was insufficient to support the jury's finding of guilt and that the district court gave an erroneous instruction on intent. He also challenges his sentencing as a career offender, raising a number of arguments about the district court's use of his prior convictions. Foremost among those claims is the contention that the court violated his due process and fair trial rights by considering a 1992 juvenile adjudication. He also claims that the court erred by: (1) failing to submit any of his qualifying convictions to a jury for proof beyond a reasonable doubt; (2) double-counting one of his prior convictions by using it both as the prerequisite offense for the felon-in-possession charge and as one of the three ACCA predicates; and (3) classifying a 1995 drug conviction as a "serious drug offense" within the meaning of the ACCA.

---

[3] Sullivan had testified that he saw the defendant stand up from a crouched position on the far side of the stairwell and that the movement was visible through a gap between a beam and the stairwell.

We begin with the sufficiency and instructional challenges, and then turn to appellant's claims of sentencing error.

## II.

Appellant argues that the jury's verdict must be vacated because the evidence presented at trial failed to connect him to the gun and ammunition. He points out that no one saw him with the firearm, which was found in a public place, and there were no fingerprints or other evidence tying him to the weapon. The case, he asserts, is "entirely circumstantial."

We review a defendant's challenge to the sufficiency of the evidence de novo. United States v. Gobbi, 471 F.3d 302, 308 (1st Cir. 2006). In examining the record, we consider whether the "'total evidence, with all reasonable inferences made in the light most favorable to the government, [is] such that a rational trier of fact could have found guilt beyond a reasonable doubt.'" Id. at 308-09 (quoting United States v. Loder, 23 F.3d 586, 590 (1st Cir. 1994)) (alteration in original). Circumstantial, as well as direct evidence, is properly taken into account, and we must uphold the jury's verdict "when it is 'supported by a plausible rendition of the record.'" Id. at 309 (quoting United States v. Ortiz, 966 F.2d 709, 711 (1st Cir. 1992)).

The evidence here, although "entirely circumstantial," amply supported the jury's conclusion that appellant possessed and

then placed the firearm under the mat in front of Apartment 87. Officer Sullivan testified that he followed appellant into the apartment building after the officers saw appellant twice make movements toward his waist and then run from the officers – conduct that was unusual for him. The jurors reasonably could credit the officer's testimony that he could see appellant rise from a crouched position near where the gun was found, notwithstanding the architect's testimony that some locations within the lobby had obstructed views. The architect also testified that the visibility was clear, from floor to ceiling, in other locations. From the facts before them, the jurors reasonably could conclude that appellant fled from the officers because he was carrying the gun and that, when Sullivan saw him in the apartment hallway, appellant was just standing up after hiding the gun under the mat.

Appellant attempts to discredit the prosecution's version of the facts by pointing to the lack of fingerprints on the gun and by suggesting that Sullivan's testimony should not have been credited. If, as Sullivan testified, the officer had been close in pursuit when appellant entered the apartment building, appellant argues that he would not have had time to put anything under the mat. Alternatively, appellant asserts, if the officer's testimony about being close is believed, a question arises as to why Sullivan did not see him put the gun under the mat. Appellant further attempts to bolster his claim by distinguishing the circumstances

here from cases in which defendants were found either in actual possession of, or near, a gun or illegal drugs.

While direct evidence of possession unquestionably would be more potent, the jury was entitled to rely on plausible inferences. See, e.g., United States v. Berrios, 132 F.3d 834, 843 (1st Cir. 1998) ("The fact that the entire case against [the defendant] is based on circumstantial, rather than direct, evidence has no bearing on sufficiency; both types of evidence provide an adequate basis for conviction."); United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995) ("Reliance on indirect, as opposed to direct, evidence in a criminal case is both permissible and commonplace. . . . [W]hen a jury draws inferences from circumstantial evidence, a reviewing court should refrain from second-guessing the ensuing conclusions as long as (1) the inferences derive support from a plausible rendition of the record, and (2) the conclusions flow rationally from those inferences."). The absence of any fingerprints on the gun is not inconsistent with a finding of guilt, and Sullivan's testimony about his timing and location was fully consistent with both the architect's testimony and the physical evidence.[4]  Given appellant's movements, his

---

[4] By contrast, in United States v. Morales, 902 F.2d 604 (7th Cir. 1990), a case on which appellant relies, the court found that a felon-in-possession conviction was undermined by inconsistencies in the testifying officer's various reports about what he had seen and by evidence indicating that the gun at issue had not been fired – a fact that also raised doubts about the officer's account. Id. at 606-08; id. at 607 ("We are left with a case that is full of

flight, his proximity to the weapon's location, the testimony that the gun was not under the mat earlier in the day, and the absence of contradictory evidence, a rational fact finder could conclude beyond a reasonable doubt that appellant possessed the firearm.

### III.

Appellant claims that the district court committed reversible error by failing to provide the jurors with a definition of "specific intent" after instructing that, "in order to convict, the government must prove that the defendant acted with the specific intent to disobey or disregard the law." The appellant did not object to the instruction at trial; his claim is therefore reviewable only for plain error. See United States v. Martínez-Vives, 475 F.3d 48, 51 (1st Cir. 2007).

To establish plain error, a defendant must show that a "clear or obvious" error both affected his substantial rights and "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. Although the court did give an incorrect instruction, it erred by imposing the burden of proving such intent on the government in the first place, not in failing to define "specific intent." To establish a violation of 18 U.S.C. § 922(g)(1), "'the government need not prove that the defendant knowingly violated the law; rather, it only need prove . . . that the defendant knowingly possessed firearms.'" United States v.

puzzles.").

-9-

Estrella, 104 F.3d 3, 9 (1st Cir. 1997) (quoting United States v. Smith, 940 F.2d 710, 713 (1st Cir. 1991)) (omission in original).

Absent unusual circumstances, a defendant will not be prejudiced by an instruction that erroneously increases the government's burden of proof. See, e.g., United States v. Lizardo, 445 F.3d 73, 86 (1st Cir. 2006) (rejecting claim of prejudice from an unclear instruction "[s]ince [the instruction] raised the government's burden of proof"); United States v. Royal, 100 F.3d 1019, 1027 (1st Cir. 1996) ("[T]he district court's instructions, by using language that impose[d] a higher burden on the government than the law requires, did not prejudice Royal."); United States v. Barnes, 890 F.2d 545, 551 n.6 (1st Cir. 1989) (finding no harm from an erroneous instruction "since it created a greater burden for the government, not for the defendant"). Here, where the plain error standard requires appellant to show a serious defect in the fairness of his trial, his attempt to win reversal of his conviction on the basis of an overly favorable instruction is hopeless. That outcome is all the more inevitable given that appellant does not challenge the incorrect instruction itself, but only the failure to elaborate on it. Cf., e.g., United States v. Mercado, 412 F.3d 243, 251 (1st Cir. 2005) (noting that a district court's refusal to issue a jury instruction amounts to reversible error only if the proposed instruction was "correct as a matter of substantive law") (citations omitted).

-10-

In sum, because appellant fails to identify – and we do not see – any way in which jury confusion about the correct standard could have disadvantaged him, we find no reversible error.

**IV.**

Under the ACCA, a defendant with three prior convictions for either serious drug offenses or violent felonies is subject to a mandatory minimum sentence of fifteen years.  See United States v. Miller, 478 F.3d 48, 49 (1st Cir. 2007); 18 U.S.C. § 924(e)(1). Appellant offers multiple reasons why the district court erred in finding that his prior convictions qualified him for the ACCA sentencing enhancement:[5] (1) the predicate offenses were not submitted to the jury and proved beyond a reasonable doubt; (2) one of the crimes, a 1995 drug conviction, does not meet the ACCA definition of a "serious" drug offense; (3) the court improperly double-counted one of his predicate offenses, using it as both a predicate ACCA crime and as the "felony" that supported the felon-in-possession charge; (4) a juvenile adjudication relied on by the court may not constitutionally be considered a conviction for purposes of the ACCA.  We turn first to the more substantial issue

---

[5] Appellant's presentence report identified the following three prior crimes as the ACCA predicates: (1) a 1992 juvenile adjudication for assault with intent to kill and assault and battery with a dangerous weapon, (2) a 1995 conviction for possession of heroin with intent to distribute, and (3) a 1996 conviction for assault and battery with a dangerous weapon.

-11-

involving the juvenile crime and then address the other three claims, all of which are easily dispatched.

## A. ACCA Status of a Juvenile Adjudication

The ACCA provides that certain juvenile conduct, including an "act of juvenile delinquency" that involved use of a knife and physical force against another person, is a "violent felony" for purposes of the ACCA, and a finding of such conduct qualifies as a "conviction." See 18 U.S.C. § 924(e)(2).[6] It is undisputed that appellant's 1992 adjudication of juvenile delinquency meets the statutory requirements.[7] However, he argues

_____

[6] Section 924(e)(2) provides in relevant part:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and

(C) the term "conviction" includes a finding that a person has committed an act of juvenile delinquency involving a violent felony.

[7] A Boston Police Incident Report prepared in connection with the juvenile adjudication at issue here reported a witness's statement that appellant had stabbed an individual with a knife.

-12-

that the Constitution prohibits the use of his juvenile conduct as an ACCA "conviction."

Under Massachusetts law, a juvenile adjudication is not deemed to be criminal in nature, see Mass. Gen. Laws Ann. ch. 119, § 53, and appellant asserts that Congress may not constitutionally classify a juvenile adjudication as a criminal conviction when state law provides otherwise. In addition, he claims that, because juvenile proceedings lack important procedural safeguards, the fact of a juvenile adjudication may not be used to enhance a sentence without proof to a jury beyond a reasonable doubt. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (establishing "the fact of a prior conviction" as an exception to the jury finding requirement for facts that increase the statutory maximum penalty); see also Jones v. United States, 526 U.S. 227, 249 (1999) (recognizing that, "unlike virtually any other consideration used to enlarge the possible penalty for an offense, . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees").

We can quickly dispose of appellant's contention that a juvenile proceeding classified as non-criminal under state law may not be treated as criminal in nature under federal law. This argument was not made in the district court, and it therefore is reviewable only for plain error. See United States v. Leahy, 473 F.3d 401, 409-10 (1st Cir. 2007). Appellant falls far short of

-13-

meeting that standard, offering only indirect support for the claim. He asserts that the Apprendi-Booker line of cases requires courts to closely examine statutory sentencing requirements for constitutional infirmity, see United States v. Booker, 543 U.S. 220, 230 (2005), and he maintains that the Fifth and Sixth Amendments, and "possibly" also the Tenth, are implicated by Congress's attempt to override the traditional state law treatment of juvenile adjudications as non-criminal proceedings.

However, he cites no cases holding that Congress oversteps constitutional bounds by ignoring state law classifications and treating particular juvenile acts as criminal in nature. The ACCA does not effect a wholesale conversion of juvenile adjudications into criminal convictions. Instead, it narrowly extends the statute's reach to specific juvenile conduct. We see no basis for denying Congress that prerogative. See United States v. Gray, 177 F.3d 86, 93 (1st Cir. 1999) ("States enjoy a broad range of flexibility in choosing how they will treat those who offend their laws. But they may not dictate how the federal government will vindicate its own interests in punishing those who commit federal crimes."); cf. Lopez v. Gonzales, 127 S. Ct. 625, 633 (2006) (holding that federal classification of certain drug crimes as misdemeanors prevails over state's felony classification for the designated conduct).

-14-

A more substantial question is whether the assumption of reliability that underlies Apprendi's exception for prior convictions – eliminating the need to prove the fact of conviction to a jury beyond a reasonable doubt – is properly extended to juvenile adjudications. See United States v. Smalley, 294 F.3d 1030, 1031-32 (8th Cir. 2002) ("[W]hether juvenile adjudications can be characterized as 'prior convictions' for Apprendi purposes is a constitutional question implicating [the defendant's] right not to be deprived of liberty without 'due process of law,' and Congress's characterization, therefore, is not dispositive.") (citation omitted). Four circuits have held that juvenile adjudications may be deemed qualifying convictions under the ACCA, consistent with Apprendi, and therefore need not be submitted to the jury for fact-finding. See United States v. Crowell, No. 06-5902, 2007 WL 1814333, at *5 (6th Cir. June 26, 2007); United States v. Burge, 407 F.3d 1183, 1190-91 (11th Cir. 2005); United States v. Jones, 332 F.3d 688, 696 (3d Cir. 2003); Smalley, 294 F.3d at 1033.

However, the Ninth Circuit, in a decision that provoked a dissent, held to the contrary in United States v. Tighe, 266 F.3d 1187 (9th Cir. 2001). The majority in Tighe reasoned that juvenile adjudications did not feature the "fundamental triumvirate of procedural protections" that guaranteed reliability – "fair notice, reasonable doubt and the right to a jury trial." Id. at 1193.

-15-

Noting its concern about the absence of one of those fundamentals – the right to trial by jury – the Ninth Circuit majority held that "Apprendi's narrow 'prior conviction' exception is limited to prior convictions resulting from proceedings that afforded the procedural necessities of a jury trial and proof beyond a reasonable doubt." Id. at 1194. In so concluding, the court pointed to language in Apprendi and Jones suggesting that the reliability of the jury process provides a basis for distinguishing between the fact of a prior conviction and other sentence-enhancing facts. Id. at 1193-94 (quoting Apprendi, 530 U.S. at 496[8]; Jones, 526 U.S. at 249[9]).

The four circuits that count juvenile adjudications as predicate crimes, whose decisions came after Tighe, also focused on

---

[8] The Apprendi passage stated:

[T]here is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.

530 U.S. at 496.

[9] The Jones passage stated:

One basis for that possible constitutional distinctiveness [of prior convictions] is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.

526 U.S. at 249.

-16-

whether juvenile adjudications are accompanied by sufficient procedural protections to justify the Apprendi exception. They disagreed, however, that a jury trial was a prerequisite. Recognizing that defendants in juvenile proceedings have no constitutional right to a jury trial, see McKeiver v. Pennsylvania, 403 U.S. 528, 545 (1971) (plurality opinion), the Eighth Circuit concluded that "the use of a jury in the juvenile context would 'not strengthen greatly, if at all, the fact-finding function,'" Smalley, 294 F.3d at 1033 (quoting McKeiver, 403 U.S. at 547). The court also cited In re Winship, 397 U.S. 358, 368 (1970),[10] in observing that the safeguards that are required for juvenile offenses – the right to notice, the right to counsel, the right to confront and cross-examine witnesses, the privilege against self-incrimination, and proof of guilt beyond a reasonable doubt – "are more than sufficient to ensure the reliability that Apprendi requires." Smalley, 294 F.3d at 1033.[11]

---

[10] The Court in Winship extended the right to proof beyond a reasonable doubt to juvenile delinquency proceedings.

[11] The Smalley court noted that the language from Apprendi and Jones cited by the Ninth Circuit did not necessarily indicate that "the fundamental triumvirate of procedural protections" are necessary for an adjudication to fall within the Apprendi exception, but only that such safeguards would be sufficient. See 294 F.3d at 1032 ("[W]hile the Court established what constitutes sufficient procedural safeguards (a right to jury trial and proof beyond a reasonable doubt), and what does not (judge-made findings under a lesser standard of proof), the Court did not take a position on possibilities that lie in between these two poles.").

-17-

The Third Circuit in Jones adopted the Eighth Circuit's reasoning and held that "[a] prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for Apprendi purposes." 332 F.3d at 696. Because the right to a jury trial is not constitutionally required in the juvenile context, its "absence . . . does not automatically disqualify juvenile adjudications for purposes of the Apprendi exception." Id. The Eleventh Circuit in Burghe and the Sixth Circuit in Crowell subsequently came to the same conclusion. See Burghe, 407 F.3d at 1190-91 ("We base our holding on the reasoning of our sister circuits in Smalley and Jones."); Crowell, 2007 WL 1814333, at *5 ("[W]e join the Third, Eighth, and Eleventh circuits in finding that the imposition of a sentence enhancement under the ACCA based on a defendant's juvenile adjudication without a jury trial does not violate the defendant's due process rights or run afoul of Apprendi.").

Thus, while their outcomes differed, all of the courts to consider the issue have agreed that "the question of whether juvenile adjudications should be exempt from Apprendi's general rule should [] turn on . . . an examination of whether juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by such an exemption." Smalley, 294 F.3d at 1032-33. We share that view of the question. For purposes

-18-

of Apprendi's recidivism exception, we see no distinction between juvenile adjudications and adult convictions; both reflect the sort of proven prior conduct that courts historically have used in sentencing. If their reliability is also equivalent, the prior conviction exception presumably would apply to juvenile adjudications with equal force.

We need not resolve in this case, however, whether trial by jury – the only one of the "fundamental triumvirate of procedural protections" not constitutionally mandated in juvenile proceedings – is a necessary assurance of reliability for Apprendi purposes. Massachusetts law gives juveniles the right to a jury trial, see Mass. Gen. Laws Ann. ch. 119, § 55A,[12] and the certified copy of the docket in appellant's juvenile case shows that he was offered, and declined, a jury.[13] Appellant therefore was provided more process than he was constitutionally due in his juvenile proceeding and, even under the Ninth Circuit's more restrictive

---

[12] Massachusetts law also requires that a delinquency adjudication be proven beyond a reasonable doubt. Mass. Gen. Laws Ann. ch. 119, § 58.

[13] Appellant suggests that his right to a jury trial was compromised because Massachusetts did not add procedural protections relating to waiver of the right until 1996, after his adjudication. See Mass. Gen. Laws Ann. ch. 119, § 55A. Given that appellant was represented by counsel when he waived his right to a jury trial, we are satisfied that he had meaningful access to a jury.

approach, his adjudication of delinquency would qualify as a predicate conviction for purposes of the ACCA.[14]

In sum, we detect no constitutional barrier to the use of that adjudication to support appellant's enhanced sentence.

## B. Other Claims of Error

Appellant's argument that the government must prove to a jury beyond a reasonable doubt the fact of a conviction that is used as a sentencing predicate has now been rejected repeatedly by this court, see, e.g., Miller, 478 F.3d at 52; United States v. Richards, 456 F.3d 260, 262 (1st Cir. 2006), and no more need be said on that issue. Likewise, as appellant concedes, the claim that his 1995 drug conviction does not qualify as an ACCA predicate is foreclosed by our precedent. Under the ACCA, a "serious drug offense" is one punishable by imprisonment of ten years or more. See 18 U.S.C. § 924(e)(2)(A). Although appellant's challenged conviction occurred in state district court, where the maximum allowable penalty is a term of two and one-half years, the statute

---

[14] We note, moreover, that Massachusetts courts have relied on juvenile adjudications for purposes of state recidivist statutes similar to the ACCA. In Commonwealth v. Furr, 788 N.E.2d 592, 594-95 (2003), habeas denial aff'd, Furr v. Brady, 440 F.3d 34 (1st Cir. 2006), the court majority rejected defendant's contention that only adult convictions counted as predicate crimes under the Massachusetts analogue to the ACCA, Mass. Gen. Laws Ann. ch. 269, § 10G, and affirmed an enhanced sentence for a firearms violation based on the defendant's earlier adjudication as a youthful offender. See also Commonwealth v. Connor C., 738 N.E.2d 731, 738 (2000) (treating a prior delinquency adjudication for a firearms violation as a "conviction" for purposes of Mass. Gen. Laws Ann. ch. 269, § 10(d)).

under which appellant was prosecuted sets a maximum of ten years' incarceration. We held in United States v. Moore, 286 F.3d 47, 49 (1st Cir. 2002), that it is the statutory maximum and not the maximum sentence allowed in Massachusetts district court that is relevant under the ACCA. We decline to revisit that holding; indeed, appellant has made only a cursory argument in support of his request that we do so. See United States v. Guzmán, 419 F.3d 27, 31 (1st Cir. 2005) (noting that subsequent panels of judges within the same circuit must follow prior panel decisions directly on point); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Appellant's final argument, though apparently novel in this circuit, is equally unavailing. He claims that the government may not use the same felony to trigger the charge of felon-in-possession of a firearm and also as one of the three predicate ACCA convictions. He points to the ACCA language providing for a minimum mandatory sentence of fifteen years "[i]n the case of a person who violates section 922(g) of this title and has three previous convictions by any court," 18 U.S.C. § 924(e)(1) (emphasis added), and argues that the word "and" indicates that the three ACCA felonies must be "in addition to" the one used to prove that he was "a person who violate[d] section 922(g)." His claim, in his words, is that the government "used up" one prior felony to

-21-

establish his felon-in-possession status and must rely on three others to trigger the enhanced penalty. He argues that, beyond the issue of statutory construction, this is a "question of fundamental fairness under the Due Process Clause."

Appellant's first difficulty with this argument is that it was not raised below and the claim therefore may be reviewed only for plain error. Leahy, 473 F.3d at 409-10. He offers no supporting case law, however, while at least two circuits already have rejected his position. See United States v. Bates, 77 F.3d 1101, 1106 (8th Cir. 1996); United States v. Wallace, 889 F.2d 580, 584 (5th Cir. 1989). In light of that contrary precedent, his conclusory invocation of the Rule of Lenity and principles of due process is insufficient to show obvious error. See Leahy, 473 F.3d at 410 ("The plain error hurdle is high.").

The government also points out that, even if appellant's construction of the statute were viable, it would not affect this case because appellant has an "extra" qualifying conviction. In addition to the three predicates on which the district court based its ACCA finding, he had a state conviction for buying or receiving a stolen motor vehicle that could have been used to establish his felon status for purposes of § 922(g)(1).[15] Thus, none of

---

[15] Section 922(g)(1) prohibits possession of a firearm by anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." Section 921(a)(20)(B) excludes crimes that are classified as misdemeanors under state law if they are "punishable by a term of imprisonment

appellant's arguments undermine the district court's finding that his prior record met the ACCA requirements.

Accordingly, for the reasons expressed above, we uphold both appellant's conviction and his sentence.

**<u>Affirmed.</u>**

---

of two years or less."  Appellant's motor vehicle conviction does not fall within the exclusion because the Massachusetts crime of buying or receiving stolen property is punishable, in its least serious version, by imprisonment for up to two and one-half years. <u>See</u> Mass. Gen. Laws Ann. ch. 266, § 60.