POSNER, Circuit Judge,
dissenting.
The defendant pleaded guilty to a charge of illegal possession of a gun by a felon, in violation of 18 U.S.C. § 922(g)(1), for which the maximum prison sentence ordinarily would have been 120 months. 18 U.S.C. § 924(a)(2). But the judge, because he found that the defendant had prior convictions for three “violent felonies,” was required by the Armed Career Criminal Act to impose a sentence of at least 15 years, 18 U.S.C. § 924(e)(1), and did so. We affirmed in an unpublished order. United States v. Welch, No. 06-3385 (7th Cir. Feb. 21, 2007). The following year the defendant moved to vacate his sentence under 28 U.S.C. § 2255. One ground of his motion was that his lawyer had rendered ineffective assistance to him in failing to challenge the use of two of the “violent felony” convictions — a juvenile conviction and a conviction for “aggravated fleeing”' — to increase his sentence.
There is no doubt that the lawyer was ineffective in failing on appeal to challenge the use of the juvenile conviction. That was a substantial issue, which had never been resolved by this court, while the only other issue he raised on appeal related to drug testing in the period of supervised release that will follow the defendant’s release from prison, an issue of little consequence in view of the length of his sentence. My colleagues have elided the issue of ineffective assistance by addressing the merits of the challenge to the use of the juvenile conviction and *430 holding that the challenge fails, so that the defendant wasn’t harmed by the lawyer’s inadequacy. And the government concedes that the status of aggravated fleeing under the Armed Career Criminal Act is independently reviewable under 28 U.S.C. § 2255(f)(3) in light of the Supreme Court’s decision in Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), because, as a result of that decision, there is “a significant risk that [the] defendant ... faces a punishment that the law cannot impose upon him.” Schriro v. Summerlin, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).
I don’t think that either the juvenile conviction or the conviction for aggravated fleeing was a conviction of a “violent felony” within the meaning of the Armed Career Criminal Act.
At age 16 the defendant was adjudged in an Illinois juvenile court to have attempted an armed robbery. He had no right to trial by jury. 705 ILCS 405/5-101(3); People v. Taylor, 221 Ill.2d 157, 302 Ill.Dec. 697, 850 N.E.2d 134, 140 (2006).
The Supreme Court ruled in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that “other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt,” unless the defendant waived these rights. See also Shepard v. United States, 544 U.S. 13, 24-26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); United States v. Browning, 436 F.3d 780 (7th Cir.2006). An initial question is whether the judgment in the defendant’s juvenile-court proceeding was a “prior conviction” for Apprendi purposes. Technically it was not a “conviction” at all, because in Illinois as in other states a juvenile-court proceeding, though it often results in a period of confinement (imprisonment by another name), is not deemed a criminal proceeding. People v. Taylor, supra, 302 Ill.Dec. 697, 850 N.E.2d at 141. And “because delinquency proceedings are not criminal proceedings, not all criminal safeguards have been employed in the juvenile proceeding. For example, a minor has no right to a jury trial, in part, because a jury trial would invest a juvenile proceeding with the appearance and form of a criminal trial.” In re R.G., 283 Ill.App.3d 183, 218 Ill.Dec. 699, 669 N.E.2d 1225, 1227 (1996). Obviously, though, such a proceeding is more akin to a criminal proceeding than to a conventional civil proceeding when the minor’s liberty is at stake. See id. at 1227-28; see also State v. Bloomer, 122 Ohio St.3d 200, 909 N.E.2d 1254, 1266 (2009). It is best described as “quasi-criminal,” as in In re B.L.D., 113 S.W.3d 340, 351 (Tex.2003).
The Supreme Court has held that no jury is required in a juvenile case, even though the outcome of such a case may well be imprisonment. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). The Court noted the “idealistic” hope that the rehabilitation of juvenile offenders would be assisted by avoiding the criminal label and the criminal courts, and while recognizing the failure of the movement to live up to its ideals, the Court decided not to terminate the experiment by requiring that all elements of criminal procedure be followed in juvenile proceedings. Id. at 545-51, 91 S.Ct. 1976 (plurality opinion).
But whether a juvenile can be imprisoned on the basis of findings made by a juvenile-court judge rather than by a jury is different from whether a “conviction” so procured (if it should even be called a “conviction”) is the kind of “prior conviction” to which the Court referred in Ap *431 prendí, namely a conviction that can be used to jack up a person’s sentence beyond what would otherwise be the statutory maximum. The government doesn’t even argue that it should be usable for this purpose; its entire argument is that because all but one of the circuits to have opined on the issue deem a juvenile-court “conviction” a “prior conviction” within the meaning of Apprendi—compare United States v. Crowell, 493 F.3d 744, 749-51 (6th Cir.2007); United States v. Burge, 407 F.3d 1183, 1187-91 (11th Cir.2005); United States v. Jones, 332 F.3d 688, 696 (3d Cir.2003); and United States v. Smalley, 294 F.3d 1030, 1031-33 (8th Cir.2002); see also United States v. Matthews, 498 F.3d 25, 32-36 (1st Cir.2007), with United States v. Tighe, 266 F.3d 1187, 1191-95 (9th Cir. 2001)—the failure of the defendant’s lawyer to raise the issue didn’t hurt the defendant because we would be unlikely to reject the majority position. That is a feeble argument, since our court does not mechanically decide a case on the basis of the circuit scorecard, without independent consideration of the issues.
The sentence I quoted from Apprendi implies that a prior conviction used to increase the length of the sentence must be the outcome of a proceeding in which the defendant had a right to have a jury determine his guilt. Otherwise why does the Supreme Court require that any fact, as distinct from a conviction, used to enhance a sentence be a fact found by a jury (unless of course the defendant waived a jury)? Why didn’t the Court just say that the fact must be found by a reliable means? Why in Jones v. United States, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), decided the year before Apprendi had the Court said that “one basis for that constitutional distinctiveness [of prior convictions] is [that] unlike virtually any other consideration used to enlarge the possible penalty for an offense ... a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees” (emphasis added)?
The Court in Apprendi did not take this back when it said that “if a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not — at the moment the State is put to proof of those circumstances — be deprived of protections that have, until that point, unquestionably attached.” 530 U.S. at 484, 120 S.Ct. 2348 (emphasis added). The defendant in this case was not “deprived of protections” that had attached to his juvenile-court proceeding. But that is not enough. The Court in Apprendi unwilling to overrule Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which permitted recidivist enhancements without requiring a trial in the new case to determine the defendant’s guilt of an offense used to enhance his sentence, created a narrow exception to the requirement that facts that increase the statutory maximum sentence must be determined by a jury. The exception requires that the defendant’s conviction of the prior offense have been established by a process in which he had had a right to a jury. The defendant in this case didn’t have that right.
The constitutional protections to which juveniles have been held to be entitled have been designed with a different set of objectives in mind than just recidivist enhancement. So the mere fact that a juvenile had all the process he was entitled to doesn’t make his juvenile conviction equiv *432 alent, for purposes of recidivist enhancements, to adult convictions.
Suppose a military commission convicted a suspected terrorist of a military crime, in a proceeding in which the defendant had not been entitled to all the rights he would have been entitled to in a conventional criminal proceeding, such as the right to a jury. Would it follow that because he had received all the rights to which military law entitled him, his conviction could be used to enhance a later conviction of a conventional crime? To answer in the affirmative would stretch Apprendi awfully far.
The Supreme Court’s opinion in McKeiver had acknowledged that the juvenile courts are a mess, and subsequent research confirms that their noncriminal “convictions” may well lack the reliability of real convictions in criminal courts. Steven A. Drizin & Greg Luloff, “Are Juvenile Courts a Breeding Ground for Wrongful Convictions?” 34 N. Ky. L.Rev. 257 (2007); x Barry C. Feld, “The Constitutional Tension Between Apprendi and McKeiver: Sentence Enhancements Based on Delinquency Convictions and the Quality of Justice in Juvenile Courts,” 38 Wake Forest L.Rev. 1111, 1161-77 (2003); Martin Guggenheim & Randy Hertz, “Reflections on Judges, Juries, and Justice: Ensuring the Fairness of Juvenile Delinquency Trials,” 33 Wake Forest L.Rev. 553, 564-82 (1998); Bluhm Legal Clinic, “Why Youth Contributes to Wrongful Convictions,” http://ewcy. org/WhyYouthContributes.aspx (visited Apr. 8, 2010). We learn from this literature that lawyers in juvenile courts are overloaded with cases, that they often fail to meet with their clients before entering a guilty plea and often rely on parents and on the child defendant himself to contact witnesses, and that they rarely file pretrial motions. And because the philosophy on which the juvenile court system was founded emphasizes protecting the “best interests of the child” and rehabilitating rather than punishing the child, the culture of the juvenile courts discourages zealous adversarial advocacy even though in its current form the juvenile justice system is much more punitive than its founders envisaged. Lawyers also appear to be reluctant to appeal juvenile cases and to seek postconviction relief; heavy caseloads, a prevalent view that appeals undermine the rehabilitation process, and an absence of awareness among juveniles of their appeal rights are the likely reasons for this reluctance.
Of particular relevance to Apprendi the literature finds that judges are more likely to convict in juvenile cases than juries are in criminal cases. Juvenile-court judges are exposed to inadmissible evidence; they hear the same stories from defendants over and over again, leading them to treat defendants’ testimony with skepticism; they become chummy with the police and apply a lower standard of scrutiny to the testimony of officers whom they have come to trust; and they make their decisions alone rather than as a group and so them decisions lack the benefits of group deliberation. It would be hasty to conclude that juvenile-court judges are more prone to convict the innocent than juries are. But if it is true that juvenile defendants fare worse before judges than they would before juries — if there is reason to think that trial by jury would alter the outcomes in a nontrivial proportion of juvenile cases — one cannot fob off the Apprendi argument with the observation that a jury makes no difference.
Only the Supreme Court can decide authoritatively what its decisions mean. But the government’s inability to give a reasoned basis for that position is telling, and the better view, I believe, is that a juvenile court “conviction” is not usable for enhancing a federal sentence.
*433 As for the defendant’s second supposed “violent felony” — “aggravated fleeing”— the other circuits are split over its proper classification. Compare United States v. Wise, 597 F.3d 1141, 1148 (10th Cir.2010); United States v. LaCasse, 567 F.3d 763, 765-67 (6th Cir.2009); United States v. Harrimon, 568 F.3d 531, 534-37 (5th Cir. 2009) ; see also United States v. Hudson, 577 F.3d 883 (8th Cir.2009), holding that it is a violent felony, with United States v. Harrison, 558 F.3d 1280, 1290-96 (11th Cir.2009), and United States v. Tyler, 580 F.3d 722, 724-26 (8th Cir.2009), holding that it is not; see also United States v. Rivers, 595 F.3d 558, 564-65 (4th Cir. 2010) . (Tyler, which did not cite Hudson, created a split within the Eighth Circuit.) Wise, Hudson, and Tyler are applications of section 4B1.2 of the federal sentencing guidelines rather than of the Armed Career Criminal Act, but “crime of violence” in the guidelines section is interpreted identically to “violent felony” in the Act. United States v. Templeton, 543 F.3d 378, 380 (7th Cir.2008).
Our court has lined up with the courts that deem “aggravated fleeing” a “violent felony” within the meaning of the Armed Career Criminal Act. United States v. Sykes, 598 F.3d 334, 335 (7th Cir.2010); United States v. Dismuke, 593 F.3d 582, 590-96 (7th Cir.2010); United States v. Spells, 537 F.3d 743, 747-53 (7th Cir.2008). These decisions are questionable in light of Chambers v. United States, — U.S. -, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009), where the Supreme Court held that the form of “escape” that consists merely of failing to report to prison on schedule to begin serving one’s sentence is not a “violent felony.” Neither is a walkaway escape. See, e.g., United States v. Hart, 578 F.3d 674, 680-81 (7th Cir.2009); United States v. Templeton, supra, 543 F.3d at 383; United States v. Lee, 586 F.3d 859, 868-74 (11th Cir.2009); United States v. Hopkins, 577 F.3d 507, 512-15 (3d Cir. 2009); United States v. Charles, 576 F.3d 1060, 1066-69 (10th Cir.2009).
Typically the walkaway escapee begins his flight on foot but soon switches to a vehicle, while in aggravated fleeing a person disregards a signal or command from a police officer in a police car to pull over. Sometimes he flees at a dangerously high speed, but the offense in Illinois requires only that in the course of flight he disobey at least two “official traffic control devices.” 625 ILCS 5/ll-204.1(a)(4). That includes not only red lights and stop signs but also such less imperative traffic control devices as signs that say “slow down,” “yield right of way,” and “no right turn on red light between 7 a.m. and 7 p.m.”
Aggravated fleeing is more dangerous on average than walkaway escapes or failures to report, but we know from Begay v. United States, supra, that dangerousness is not enough to render a crime a “violent felony.” Begay involved driving under the influence of alcohol or drugs, and the Court held that such conduct is not a violent felony even though it is dangerous. Is aggravated fleeing more dangerous? When it takes the form of running a couple of stop signs, perhaps late at night when there is no other traffic on the road, it may well be less dangerous than the average DUI case. Who knows? In any event Begay requires that the offense not only create a danger comparable to the dangers created by the offenses enumerated in the Armed Career Criminal Act (arson, burglary, extortion, and use of explosives to commit a crime) but also further resemble them in involving “purposeful, violent, and aggressive” conduct.
The test is difficult to apply. It is unclear what “aggressive” adds to “violent” (the Court didn’t say), except in a case of defensive use of force, which ordinarily is *434 not criminal at all, although it can be, as in a case in which a person is unreasonable in believing (though it is an honest belief) that he must use deadly force to defend himself. It is not even clear what “purposeful” adds to the definition of “violent felony” since even strict-liability crimes are “purposeful” in the sense that a deliberate act is involved. Sex with an underage girl is a crime even if the perpetrator thinks her of age, but the sexual act itself is deliberate.
Thus I don’t agree that just because the defendant intended to flee from the police his action was “purposeful” within the meaning of the Supreme Court’s formula. Given that the purpose of the catch-all provision in the Armed Career Criminal Act is to enable courts to identify crimes that are similar to the enumerated ones, “purposeful” should be interpreted to mean trying to harm a person’s person or property, which is characteristic of the enumerated crimes. Burglary requires proof of intent to commit a crime following unlawful entry, arson proof of intent to destroy property without legal authority, extortion proof of intent to obtain another person’s property by a threat. These crimes do not merely create a risk of harm, as aggravated fleeing does.
It’s not that the enumerated crimes necessarily are motivated by a desire to hurt anyone. The criminal may simply want the victim’s property. (In an arson case, the victim is often an insurance company— and arsonists don’t dislike insurance companies — rather the contrary!) But to get what he wants he has to harm the victim; purpose to harm is intrinsic to the crime although it often is not the motive. That is not true in a flight case any more than it is true in a DUI case. In both the perpetrator is behaving in a dangerous manner but in neither is he trying to take anything from anyone or otherwise harm anyone. And “although the [fleeing] statute does require intent, the required mental state is only intent to be free of custody, not intent to injure or threaten anyone. It is easy to violate [such a statute] without intending or accomplishing the destruction of property or acting in an aggressive, violence-provoking manner that could jeopardize guards or bystanders.” United States v. Templeton, supra, 543 F.3d at 383.
Dismuke calls aggravated fleeing “aggressive” because it involves defiance of authority. 593 F.3d at 595. But that is true of all escapes — the point of Chambers was that we can’t treat all escapes alike. Dismuke calls fleeing “active” rather than “passive,” id., but all actions are active, yet most are not aggressive. To fail to report to prison when ordered is to defy the authority of the sentencing judge and the Bureau of Prisons. Many acts of civil disobedience are emphatically active and defiant of authority at their core, but are miles away from being aggressive. Dismuke notes the possibility of a future confrontation with authority but that is also a likely consequence of a walkaway escape or a failure to report and is an especially likely consequence of many acts of civil disobedience. Adopting a rule that would exclude from the category of “violent felony” a crime that while it may be dangerous does not involve any intention of harming anyone would go some distance toward clarifying the meaning of “violent felony” and by doing so perhaps check the avalanche of litigation over that meaning.
Echoing Dismuke, the majority opinion in the present case tries to distinguish fleeing from an officer from a walkaway escape or failure to report by describing-each of the latter offenses as a “passive crime characterized by inaction,” which might not be detected or provoke an immediate pursuit, in contrast to “vehicular fleeing [which] necessarily involves afflr *435 mative action on the part of the perpetrator” and “challenges the immediate authority of the police officer and calls on the officer to give immediate chase.” But both a walkaway escape and a failure to report are challenges to authority; and while the failure to report does involve “inaction” rather than (affirmative) action, a walkaway escape does not. I don’t understand what “immediate authority” means and I disagree that the fleer “call[s] on the officer to give immediate chase”; he would much prefer that the officer not give chase and doubtless in some cases the officer does not.
Only the Supreme Court can resolve the issues presented in this appeal. But pending the Court’s intervention I am persuaded that the defendant’s sentence is illegal.