**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0579n.06
Filed: August 13, 2007

No. 06-5632

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| KEVIN MARTIN, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

**OPINION**

**Before: GILMAN, GRIFFIN, Circuit Judges; ACKERMAN, District Judge.**[*]

**HAROLD A. ACKERMAN, District Judge.** This case arises from a large methamphetamine manufacturing conspiracy in Chattanooga, Tennessee. The district court had jurisdiction pursuant to 18 U.S.C. § 3231 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.    Factual Background

On February 21, 2006, this Court issued a decision on Defendant Kevin Martin's prior

---

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

1

appeal from his sentence. *See United States v. Martin*, 438 F.3d 621 (6th Cir. 2006) ("*Martin I*"). The substance of that Opinion will be addressed more fully below, but because the essential facts have not changed, we repeat below Section I.B. from this Court's prior Opinion:

> The government charged Martin with five offenses relating to the production of methamphetamine, all of which stem from two incidents in late 2003. On November 24th of that year, Martin, who was on supervised release for previous methamphetamine offenses, rented a hotel room outside of Chattanooga, Tennessee. Law enforcement officers learned of a possible methamphetamine laboratory at the hotel and arrested five people found in a room rented by Christi Kinsey. Among those people was Genea Davis, Martin's girlfriend, who consented to a search of the room that she was sharing with Martin. In that room, the officers discovered a hot plate, Coleman fuel, jars with multi-layered liquids, antifreeze, and a 1,000 milliliter flask-all materials commonly found in methamphetamine labs. Subsequent tests confirmed that at least some of the materials had been used to produce methamphetamine.
>
> The government learned from Davis that several of the articles recovered at the hotel belonged to Rory Shankles, another known formulator of methamphetamine. Davis then led police to Shankles's residence, a location where Davis reported having seen Shankles and Martin "cooking" methamphetamine two days earlier. Police obtained a warrant and searched the premises, recovering 24 empty bottles of pseudoephedrine, an over-the-counter decongestant that is also a raw material used to manufacture methamphetamine. Those bottles, when full, contained approximately 51 grams of pseudoephedrine.
>
> The second incident occurred on December 2, 2003, when police searched an abandoned pickup truck that Martin had borrowed from his friends. Officers found items in the truck similar to those previously discovered during the search of the hotel room in November, as well as 1.1 grams of methamphetamine residue attached to coffee filters.
>
> After Martin's codefendants pled guilty to various methamphetamine-related charges, a grand jury returned a superseding indictment charging Martin with five counts stemming from the production of methamphetamine and the use of a hotel room as a methamphetamine lab. Martin entered a guilty plea to all five counts on the day before his trial was scheduled to begin.

The following is repeated verbatim from the Court's prior Opinion Section I.C.:

> The final PSR attributed to Martin 51 grams of pseudoephedrine and 1.1 grams of seized methamphetamine. Martin objected to the calculation of the drug quantity, arguing that the Supreme Court's intervening decision in *Blakely v. Washington*, 542 U.S. 296 (2004), barred the district court from accepting a quantity that had neither been found by a jury beyond a reasonable doubt nor admitted by Martin in his guilty plea. The government responded by offering the testimony of Mitchell Smith, a member of the DEA task force who worked on the case, as well as that of Christi Kinsey, one of Martin's coconspirators. These witnesses explained Martin's ties to the laboratory found in the hotel room and to the pseudoephedrine bottles found at Shankles's residence. The district court credited this testimony in ruling that the amount from the empty bottles had properly been attributed to Martin.
>
> In calculating Martin's criminal history category, the PSR assessed one point for each of four car thefts occurring between November 11 and December 4, 2000. Martin objected to these assessments both in writing and at the sentencing hearing, arguing that he had engaged in "a string of thefts or a common scheme to steal autos," all of which were "related" offenses for which he should have been assessed only one point under U.S. Sentencing Guidelines Manual § 4A1.2(a)(2). The district court rejected Martin's argument, observing that the offenses had taken place at different times and at different locations, and that the state courts had not entered an order consolidating the convictions. With Martin's offense level and criminal history category yielding a Guidelines range of 168 to 210 months, he was sentenced to 189 months in prison and 6 years of supervised release.

## B.      Procedural History

Martin filed a timely appeal from his first sentence, which this Court addressed in a published opinion on February 21, 2006. *See Martin I*. In that opinion, the *Martin I* court affirmed the district court's determination as to drug quantity, finding no error in the district court's reliance on U.S.S.G. § 2D1.1, which provides a ratio for converting a quantity of pseudoephedrine to a marijuana equivalency. *See id*. at 635. The *Martin I* court also affirmed

3

the district court's calculation of Martin's criminal history points. *Id.* at 639. However, the *Martin I* court concluded that Martin's sentence violated the intervening decision of *United States v. Booker*, 543 U.S. 220 (2005), and the court thereby vacated the sentence and remanded "for resentencing consistent with *Booker*." *Martin I*, 438 F.3d at 639.

On April 19, 2006, the district court resentenced Martin under an advisory Guidelines regime. Having been affirmed in its calculation of drug quantity and criminal history points, the district court ultimately imposed the exact same sentence of 189 months imprisonment. Martin filed this timely appeal. Martin argues that the district court's factual findings in regard to empty pill bottles found at one of the locations utilized in the conspiracy–the Iris Drive location–violated his Sixth Amendment rights and that the district court's sentence is unreasonable and therefore violates *Booker*.

## II.    DISCUSSION

### A.    Standard of Review

"This [C]ourt reviews the district court's application of the United States Sentencing Guidelines *de novo* and the district court's findings of fact at sentencing for clear error." *United States v. Tocco*, 306 F.3d 279, 284 (6th Cir. 2002); *see also United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007); *United States v. Cousins*, 469 F.3d 572, 575 (6th Cir. 2006). This Court reviews the district court's sentence for reasonableness. *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005).

### B.    The Sixth Circuit's presumption of reasonableness does not violate *Booker*

Martin's first argument is that the Supreme Court's decision in "*Booker* determined that a presumptive guideline system violated the Sixth Amendment." (Martin Br. at 12.) Since Martin filed this appeal, the Supreme Court has addressed this very issue of whether the law permits a court of appeals to use a presumption that a sentence imposed within a properly calculated Guidelines range is a reasonable sentence. *See Rita v. United States*, 551 U.S. ----, No. 06-5754, 2007 WL 1772146, at *3 (June 21, 2007). The *Rita* Court found that a court of appeals could use such a presumption. *See id*. at *6 ("[A] court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines."); *United States v. Crowell*, --- F.3d ----, 2007 WL 1814333, at *6 (6th Cir. June 26, 2007) (citing *Rita*); *see also United States v. Sachsenmaier*, --- F.3d ----, 2007 WL 1839282, at *4 (7th Cir. June 28, 2007) ("[T]he Supreme Court has now expressly endorsed the rebuttable presumption of reasonableness for appellate review of a district court's sentencing decision."). Therefore, Martin's first argument is without merit because the Supreme Court has definitively held that this Circuit's presumption of reasonableness does not violate the law.

**C.     Evidence obtained at the Iris Drive location was properly attributed to Martin for purposes of calculating the appropriate Guidelines range**

Martin also argues that his sentence violates his Sixth Amendment rights because the district court made factual findings to which he did not plead guilty. Specifically, Martin contends that the PSR inappropriately attributed to him 51 grams of pseudoephedrine based upon a search of a residence at 8316 Iris Drive, Chattanooga, Tennessee (hereinafter "Iris Drive"). Martin argued at his first sentencing that he did not participate in any illegal activities at the Iris

Drive location and therefore any evidence obtained from there should not be attributed to him.

It is not clear whether Martin made this same argument on his previous appeal to this Court such that the law of the case now prevents this Court from revisiting the issue. *See Wilson v. Morgan*, 477 F.3d 326, 334 (6th Cir. 2007) ("The law of the case doctrine precludes consideration of issues that have been decided in a previous appeal."); *United States v. Corrado*, 227 F.3d 528, 533 (6th Cir. 2000) ("An earlier appellate court's decision as to a particular issue may not be revisited unless 'substantially new evidence has been introduced, . . . there has been an intervening change of law, or . . . the first decision was clearly erroneous and enforcement of its command would work substantial injustice.'") (quoting *Miles v. Kohli & Kaliher Assocs., Ltd.*, 917 F.2d 235, 241 n. 7 (6th Cir. 1990).) The *Martin I* court did not specifically address whether the evidence obtained from Iris Drive was properly attributable to Martin. Instead, *Martin I* noted that Martin had objected to the "*calculation* of the drug quantity, arguing that the Supreme Court's intervening decision in *Blakely v. Washington*, 542 U.S. 296 (2004), barred the district court from accepting a quantity that had neither been found by a jury beyond a reasonable doubt nor admitted by Martin in his guilty plea." *Martin I*, 438 F.3d at 626-27 (emphasis added). But, in the same paragraph, the court in *Martin I* explained that the Government rebutted Martin's argument by calling a DEA agent and one of Martin's co-conspirators, who explained "Martin's ties . . . to the pseudoephedrine bottles found at [Iris Drive]." *Id*. at 627. The *Martin I* court further noted that "[t]he district court credited this testimony in ruling that the amount from the empty bottles had properly been attributed to Martin." *Id*. While it appears that this Court, in *Martin I*, intended to affirm the district court's attribution of the Iris Drive bottles to Martin, it did not expressly make such a finding. As a result, we will address the issue in the first

6

instance and not treat the issue as subject to the law of the case.

Instead of the *attribution* of the Iris Drive pseudoephedrine, *Martin I* addressed, as a matter of first impression, whether the Guidelines correctly established ratios to estimate the amount of methamphetamine that can reasonably be manufactured from certain precursor chemicals. *Martin I*, 438 F.3d at 624. As the PSR explained, a search of Iris Drive resulted in 24 empty bottles of pseudoephedrine, each of which originally contained 36 pills that were 60 milligrams each. As a result, the combined total of 24 bottles yielded a total of 51.84 grams of pseudoephedrine. At some point, the 51.84 grams were rounded down to 51, but the difference is irrelevant to the actual calculation of Martin's sentencing range.

As this Court noted in *Martin I*, Amendment 611 to Appendix C of the Guidelines "provides a new chemical-quantity table for precursor chemicals like pseudoephedrine and a conversion table for those chemicals." *Martin I*, 438 F.3d at 625 (citing U.S.S.G., App. C, Amendment 611 (Nov. 1, 2003)). "These tables adopt a 50% conversion ratio for pseudoephedrine, such that 2 grams of the chemical is equivalent to 1 gram of methamphetamine. That ratio was inserted into the tables in § 2D 1.1, cmt. n.10, which already established that 1 gram of methamphetamine is to be treated as the equivalent of 20 kilograms of marijuana for sentencing purposes." *Id*. Therefore, "[s]ince the enactment of Amendment 611, . . . 1 gram of pseudoephedrine is treated as the equivalent of 10 kilograms of marijuana." *Id*.

As a result, Martin was held accountable for the equivalent of 510 kilograms of marijuana, which resulted in a base offense level of 28. *See* U.S.S.G. § 2D1.1(c)(6) (establishing base offense level of 28 if marijuana quantity is more than 400, but less than 700 kilograms). The *Martin I* court found no constitutional violation in the 50% conversion ratio established by

the Sentencing Commission and the court thereby affirmed the district court's calculation resulting in a base offense level of 28. *See Martin I*, 438 F.3d at 639. However, as noted above, the *Martin I* court did not specifically address whether the pseudoephedrine found at the Iris Drive location should have been attributed to Martin in the first place. Again, it is not clear that Martin raised this argument in his first appeal, even though he preserved the issue for appeal by objecting to such attribution at his first sentencing. (*See, e.g.*, J.A. at 125, Tr. of First Sentencing Hr'g at 18:2-4 (Sept. 27, 2004).)

In any event, Martin has raised the issue here after preserving it at his second sentencing. (*See* J.A. at 147, Tr. of Second Sentencing Hr'g at 3:10-19 (Apr. 19, 2006).) As noted previously, at the first sentencing, when Martin contested the attribution of evidence found at Iris Drive, the Government called Christi Kinsey, a co-defendant who had pled guilty to the methamphetamine manufacturing conspiracy. Kinsey testified at Martin's first sentencing that she had been involved in methamphetamine manufacturing with Martin at two locations, one of which was Iris Drive, where she and Martin had performed the "gassing off" part of methamphetamine manufacturing approximately four days prior to their arrest.[1] Martin's attorney cross-examined Kinsey, but to no avail because the district court found Kinsey credible on this issue and ultimately ruled that the bottles found at Iris Drive were properly attributed to Martin. (J.A. at 132-33, Tr. of First Sentencing Hr'g at 25:21 to 26:5 (Sept. 27, 2004).)

At Martin's second sentencing, his attorney sought a continuance so that he could secure Kinsey's presence to testify again. Martin's attorney explained that since the first sentencing at

---

[1] Hydrochloric acid is used to extract methamphetamine from pseudoephedrine. *United States v. Chamness*, 435 F.3d 724, 725 (7th Cir. 2006). This method is often referred to as "gassing off" because of the toxic gas created from the combination of chemicals.

which Kinsey testified, Martin's attorney had obtained a written statement, allegedly signed by Kinsey, in which she stated that "Kevin Martin and I have never engaged in any illegal activity." (J.A. at 147, Tr. of Second Sentencing Hr'g at 3:18-19 (Apr. 19, 2006).)  The Government contested the Kinsey statement's authenticity, but, after assuming it was authentic, the Government pointed out that it was signed in March 2004 and that Kinsey had testified at Martin's first sentencing in September 2004.  Understandably, the Government sought clarification as to why Martin waited nearly two years to give his attorney an exculpatory statement signed by Kinsey that was available for approximately six months prior to Martin's first sentencing.  Martin's attorney did not offer any explanation.[2]  Ultimately, the district judge stated: "I'm just going to say that it's not my plan to revisit the Guidelines determinations at this point. . . . But even if I were to revisit the Guidelines, I don't think I'd change them based upon this alleged supposed statement that Christi Kinsey made before she testified here at the [first] sentencing hearing."  (*Id*. at 153, Tr. of Second Sentencing Hr'g at 9:6-12 (Apr. 19, 2006).)

This Court now expressly affirms the district court's determination that the Iris Drive evidence was properly attributable to Martin because he pled guilty to Counts 3 and 5 of the Superseding Indictment, which charged that on or about November 24, 2003, and on or about December 2, 2003, in the Eastern District of Tennessee Martin "did knowingly and intentionally

---

[2] Notably, Kinsey pled guilty to the conspiracy to manufacture methamphetamine on March 15, 2004.  While the Kinsey statement offered at Martin's second sentencing was allegedly signed in March 2004, the exact date is never mentioned and the letter is not in the record.  If it was authentic and signed prior to her guilty plea, then Martin faces an additional hurdle in that any statement of innocence prior to March 15 arguably is superseded by the plea entry of that day.  But even if Kinsey signed the exculpatory statement after March 15, Martin still has a credibility problem, i.e., why would Kinsey plead guilty and then say she was innocent a few days later without attempting to withdraw her guilty plea?

9

possess equipment, chemicals, products, and materials which may be used to manufacture methamphetamine" in violation of 21 U.S.C. § 843(a)(6) and 18 U.S.C. § 2. (J.A. at 56-57.) Counts 3 and 5 did not limit the location of where Martin possessed such equipment, chemicals, products, and materials. Thus, Martin's connection with the conspiracy combined with the evidence found at the various locations utilized by him and his co-conspirators supports the district court's conclusion that the Iris Drive evidence is properly attributable to Martin.

In addition, the district court did not err in crediting the testimony of Kinsey, along with Officer Mitchell Smith, in finding the Iris Drive evidence attributable to Martin. Moreover, Martin's argument that his Sixth Amendment rights were violated by attributing the Iris Drive evidence to him based upon Kinsey's "unreliable" testimony is unavailing because he has failed to proffer any reason, much less evidence, as to why the exculpatory Kinsey statement was not revealed at or prior to the first sentencing, at which Kinsey testified. Therefore, this Court affirms the district court's Guidelines calculation, which resulted in a criminal history category of V, base offense level of 28, and a total offense level of 31, yielding a suggested sentencing range of 168-210 months imprisonment.

### D. Martin has failed to rebut the appellate presumption of reasonableness

Martin's final argument is that the district court's sentence of 189 months imprisonment is unreasonable, regardless of whether it was within the appropriate Guidelines range. As this Court recently held, when the district court sentences a defendant within the advisory Guidelines range, his sentence is credited with a rebuttable presumption of reasonableness and it is therefore incumbent upon the defendant to establish that his sentence was unreasonable. *See United States*

*v. Crowell*, --- F.3d ----, 2007 WL 1814333, at *6 (6th Cir. June 26, 2007) (citing *Rita*, 551 U.S. ----, No. 06-5754, 2007 WL 1772146, at *6-7; *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006)).

Martin asserts that the district court "viewed the Guidelines as presumptively reasonable, and as a consequence, failed to properly consider the other § 3553(a) factors as required." (Martin Br. at 20.) Martin is no doubt correct that the presumption of reasonableness is an *appellate* presumption only and a district court is not permitted to presume that a sentence within the Guidelines is reasonable, but instead must make an independent inquiry utilizing the appropriate § 3553(a) factors. *See Rita*, 551 U.S. ----, No. 06-5754, 2007 WL 1772146, at *9 ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply") (citing *Booker*, 543 U.S. at 259-60); *see also United States v. Buchanan*, 449 F.3d 731, 734 (6th Cir. 2006) (holding that "trial judges may not give an irrebuttable presumption of reasonableness to a guidelines sentence" because "[s]uch an approach cannot be squared with *Booker*").

Thus, it is necessary to review the district court's sentencing reasoning to determine whether it properly utilized and applied the § 3553(a) factors. Martin argues that the district court's "sentencing method . . . directly contravenes *Booker*, 18 U.S.C. § 3553(a), and [the Sixth Circuit's] prior holdings that district courts are to consider *all* the § 3553(a) factors in arriving at a sentence sufficient to, but not greater than necessary, to comply with the purposes of § 3553(a)." (Martin Br. at 20-21 (emphasis in original).) Martin is correct that a "sentence is unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects

11

what the judge deems an appropriate sentence without such required consideration." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005); *see also United States v. Morris*, 448 F.3d 929, 931 (6th Cir. 2006).

However, "'there is no requirement that the district court engage in a ritualistic incantation of the § 3553(a) factors it considers.'" *United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006) (quoting *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005)); *see also Crowell*, --- F.3d ----, 2007 WL 1814333, at *6. In addition, this Court has expressly declared that a "district court need not explicitly reference each of the § 3553(a) factors in its sentencing determination." *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006). Moreover, this Court has previously approved a sentence that did not result from an explicit consideration of each factor. *United States v. Dexta*, 470 F.3d 612, 615 (6th Cir. 2006) ("Undeniably, the district court did not explicitly consider each and every § 3553(a) factor. Although a more specific discussion of the relevant factors would have been preferable, the record is nevertheless sufficient to allow for meaningful appellate review."). Thus, Martin's argument that the district court failed to consider *all* of the § 3553(a) factors is unavailing because it appears to be an argument premised on the fact that the district court did not explicitly reference each factor.

Indeed, the district court considered several of the § 3553(a) factors, including the characteristics of the defendant–§ 3553(a)(1)–by noting that Martin was "a chronic meth user, as well as a manufacturer." (*See* J.A. at 155-56, Tr. of Second Sentencing Hr'g at 11:23 to 12:5 (Apr. 19, 2006).) Moreover, as the district court explained, "this case . . . is the second meth case [Martin's] had in this court. He was operating basically on a fairly large scale here." (*Id*. at 156, 12:3-5.) These findings demonstrate that the district court was concerned with Martin's

12

addiction as well as his entrepreneurial initiative in creating significant quantities of this illegal drug. The district court's statements indicate that it also was concerned with the size of the conspiracy and the fact that Martin had not learned his lesson from his previous conviction for the same drug crime in the same district court.

In addition, the district court considered the need to protect the public–§ 3553(a)(2)(C)–from Martin, a recidivist. The district court explained that "[d]rug tests taken during [Martin's] supervised release the last time show that he was a user and when he was arrested here, he basically was out of control, and could have hurt somebody." (*Id*. at 156, 12:6-10.) It almost goes without saying that a chronic drug addict, such as Martin, does not operate with full faculties, and such volatility in an individual poses a danger to the public.

The district court also noted the seriousness of the offense–§ 3553(a)(2)(A)–by stating that "[a] number of lives have been severely wrecked or at least damaged as a result of Mr. Martin's activity. Children were endangered. That's another factor." (*Id*. at 156, 12:10-13.) Again, the district court's statement that the impact of Martin's criminal activity on numerous individuals, including children, indicates that Martin's crime was not a minor matter, but a serious offense for which serious consequences should result. In addition, the district court recognized the need to provide Martin with appropriate medical and correctional treatment–§ 3553(a)(2)(D)–by the fact that it explicitly recommended the 500 hour residential in-house treatment program for drug addicts. (*Id*. at 157-58, 13:25 to 14:1.)

The district court further explained that "this [case] is not out of the ordinary," and then ultimately imposed a sentence of 189 months imprisonment. (*See id*. at 157, 12:2-3.) Martin has failed to proffer any reason, pursuant to the § 3553(a) factors, as to why his sentence is

13

unreasonable. Indeed, the district court's statement that this case is "not out of the ordinary" is prescient given the Supreme Court's holding in *Rita* that a district court's sentence within the applicable Guidelines range will usually be reasonable in the "typical," "heartland" or "mine run" of cases. *See Rita*, 551 U.S. ----, No. 06-5754, 2007 WL 1772146, at *8, 5, 13. Moreover, as the *Rita* Court explained, "a statement of reasons is important. . . . [insofar as t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id*. at *12. Martin has failed to provide any explanation of what factors the district court did not consider, much less how a consideration of them should have affected the district court's decision. Therefore, we hold that the district court set forth a sufficient statement of reasons for imposing a sentence of 189 months on Martin because the district court analyzed the facts through the lens of § 3553(a) by reflecting on the seriousness of the offense, the characteristics of the defendant, the need to protect the public, and the defendant's need for drug treatment.

## III.  CONCLUSION

For the foregoing reasons, the district court's sentence is hereby **AFFIRMED**.